UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MID-CONTINENT CASUALTY CO., a foreign corporation,

        Plaintiff,

vs.

DWIGHT HOLLOWAY & CO., a Florida corporation d/b/a HOLLOWAY CUSTOM HOMES; HOLLOWAY CUSTOM HOMES, LLC, a Florida limited liability company; DWIGHT D. HOLLOWAY; EDWARD BATES, individually; JENNIFER BATES, individually; WILLIAM F. STUHRKE, Ph.D, P.E., and ELIZALDE CARPENTRY SERVICES, INC., a Florida corporation,

        Defendants.
_____/

Case No.:   6:09-cv-2009-ORL-35KRS

## COMPLAINT FOR DECLARATORY RELIEF

Mid-Continent Casualty Company ("Mid-Continent") sues Defendants, Dwight Holloway & Co., a Florida corporation d/b/a Holloway Custom Homes ("HCH"); Holloway Custom Homes, LLC, a Florida limited liability company ("HCH LLC"); Edward Bates, individually; Jennifer Bates, individually; William F. Stuhrke, Ph.D, P.E. ("Stuhrke"); and Elizalde Carpentry Services, Inc., a Florida corporation ("Elizalde"), and alleges:

### NATURE OF ACTION

1.    This is an action for declaratory relief, pursuant to 28 U.S.C. §§2201 and 2202, for the purpose of determining a question of actual controversy between the parties.

## JURISDICTION AND VENUE

2. Jurisdiction in this Court is proper, pursuant to 28 U.S.C. §1332(a), since the amount in controversy exceeds $75,000, exclusive of interest and costs, and this civil action is between citizens of different states.

3. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(a), since the subject insurance policy was issued, delivered, and incepted in Winter Park, Florida.

4. All conditions precedent to the institution of this action have occurred, been performed or have been waived.

## THE PARTIES

5. The Plaintiff, Mid-Continent, is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma.

6. The Defendant, HCH, is a Florida corporation, and a citizen of the State of Florida with its principal place of business in Orange County, Florida.

7. The Defendant, HCH LLC, is a Florida limited liability company, and a citizen of the State of Florida with its principal place of business in Orange County, Florida.

8. The Defendant, Holloway, is a citizen of the State of Florida.

9. The Defendant, Edward Bates, is a citizen of the State of Florida.

10. The Defendant, Jennifer Bates, is a citizen of the State of Florida.

11. The Defendant, William F. Stuhrke, Ph.D, P.E., is a licensed professional engineer in the State of Florida, who is a citizen of the State of Florida.

12. The Defendant, Elizalde, is a Florida corporation, and a citizen of the State of Florida with its principal place of business in Orange County, Florida.

## **FACTUAL ALLEGATIONS**

13. On April 3, 2009, Edward Bates and Jennifer Bates served their Third Amended Complaint against HCH and HCH LLC in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, Case No. 2007-CA-004771 ("Underlying Action"). (A copy of the Third Amended Complaint, is attached as Exhibit A, without exhibits (the "Underlying Complaint")). Upon information and belief all parties already have a copy of all of the exhibits to the Third Amended Complaint.

14. The Bates allege their Underlying Complaint arises from their purchase of a custom single-family home, which they had to evacuate due to a myriad of significant structural defects and building code violations. (See Underlying Complaint, ¶1).

15. The Bates further allege the following:

    a. On February 13, 2006, the Bates contracted to purchase the property from John F. Logan and Beverly G. Logan, who contracted with HCH and HCH LLC to build the home. (See Underlying Complaint, ¶13, 15, 28).

    b. HCH served as the contractor for the construction of the home, and directly contracted with the designer, engineer of record, and truss manufacturer for the home and all trade subcontractors. (See Underlying Complaint, ¶15).

    c. HCH and Holloway concealed defective work on the home, resulting in violations of building code, deviations from the permitted plans, and contrary to the standard of care for a licensed contractor. (See Underlying Complaint, ¶21).

    d. The defective work of HCH and its subtrades damaged the work of other trades, damaged other property, and will necessitate comprehensive repair or

    total replacement, further damaging the home, work of other trades and other property. (See Underlying Complaint, ¶23).

  e. Construction of the home was substantially completed in January of 2006, and the Certificate of Occupancy was issued in March of 2006.

  f. The Bates noticed the defects after moving into the home; the alleged defects "were not visible to the Bates, and did not manifest, prior to them purchasing the home." (See Underlying Complaint, ¶34).

16. The Bates sued HCH and Holloway for violation of §553.84, Fla. Stat. (Count I); HCH LLC for breach of express warranty (Count III); and HCH and Holloway for fraud in the inducement (Count VII). (See Underlying Complaint).

17. In their Underlying Complaint, the Bates allege they suffered damages as follows:

  a. In Count I, they allege they suffered damages including "loss of the value of real property and damage to the home, [and] damage caused by construction defects to other elements of the home, damage to work of other trades and other property, and costs of repair or replacement." (See Underlying Complaint, ¶61).

  b. In Count III, they allege they suffered damages, including "substantial repair and replacement costs, in addition to other actual incidental and consequential damages, such as rental expenses, moving costs and storage costs." (See Underlying Complaint, ¶83).

  c. In Count VII, they allege they suffered damages, including having "lost the use of the home, have been forced to pay the costs to repair defective construction, and have been forced to pay the cost to repair damage that was caused by the

14462191v1 879147 56475

defective construction, the costs of which are ongoing." (See Underlying Complaint, ¶131). They further allege they suffered "incidental and consequential damages in the form of...rental costs for a temporary replacement residence, mortgage expenses, moving costs and rental costs for a storage unit." (See id).

18. On November 2, 2009, Elizalde served its Amended Crossclaim against HCH LLC and Holloway, alleging HCH LLC and Holloway for contribution and for violation of §553.84, Fla. Stat. (A copy of Elizalde's Cross claim is attached as Exhibit B). Elizalde alleges it was not a licensed contractor and could not obtain building permits. (See Elizalde's crossclaim, ¶3). In its contribution count, Elizalde alleges that HCH LLC and Holloway, as license holder and qualifying agent had non-delegable duties to inspect all work performed for the construction of the subject residence. (See ¶7). Elizalde alleged any defects or problems with the work were the responsibility of HCH LLC and Holloway to inspect and correct, and that to the extent Elizalde is found liable, HCH LLC and Holloway are liable to Elizalde in contribution for such damages. (See ¶11). In its statutory count, Elizalde alleged HCH LLC owed a non-delegable duty to comply with building codes, and that both HCH LLC and Holloway had a non-delegable duty to inspect the home during construction to ensure all work done met or exceeded building codes. (See ¶7-8). It further alleged HCH LLC and Holloway breached their duties, and to the extent building code violations are proven, Elizalde sustained damages as a result. (See ¶11-12).

19. On November 19, 2009, Stuhrke served its Amended Crossclaim against HCH LLC and Holloway, alleging HCH LLC and Holloway for contribution and for violation of §553.84, Fla. Stat. (A copy of Stuhrke's Cross claim is attached as Exhibit C). Stuhrke alleges

14462191v1 879147 56475

he is a licensed professional engineer, but not a licensed general contractor. (See Stuhrke's crossclaim, ¶3). In his contribution count, Stuhrke alleges that HCH LLC and Holloway, as license holder and qualifying agents had non-delegable duties to inspect all work performed for the construction of the subject residence. (See ¶5). Stuhrke alleged any defects or problems with the work were the responsibility of HCH LLC and Holloway to inspect and correct, and that to the extent Elizalde is found liable, HCH LLC and Holloway are liable to Stuhrke in contribution for such damages. (See ¶10). In its statutory count, Stuhrke alleged HCH LLC owed a non-delegable duty to comply with building codes, and that both HCH LLC and Holloway had a non-delegable duty to inspect the home during construction to ensure all work done met or exceeded building codes. (See ¶12-13). It further alleged HCH LLC and Holloway breached their duties, and to the extent building code violations are proven, Stuhrke sustained damages as a result.

## POLICY PROVISIONS

20. Mid-Continent issued a commercial general liability policy of insurance to HCH, Policy No. 04-GL-000612541, from 12/2/05 to 12/2/06. (A copy of the policy is attached as Exhibit "D").

21. The Policy contains the following pertinent insuring agreement:

**1.      Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

14462191v1 879147 56475

    (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

           No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

  **b.**  This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;

    (2)    The "bodily injury" or "property damage" occurs during the policy period; and

    (3)    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

(Form CG 00 01 12 04, p.1 of 15.)

    22.    The Policy contains the following pertinent exclusions:

    **2.**    **Exclusions**

        This insurance does not apply to:

    **j.**    **Damage To Property**

        "Property damage" to:

* * *

      (5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

      (6)    That particular part of any property that must be restored,

7

>   repaired or replaced because "your work" was incorrectly performed on it.
>
>   * * *
>
>   Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

23.    The Policy contains an endorsement changing the exclusion for damage to work performed by subcontractors on the insured's behalf:

>   2.   Exclusions
>
>   This insurance does not apply to:
>
>   **j.   Damage To Property**
>
>   This insurance does not apply to:
>
>   >   l.   Damage to Your Work
>   >
>   >   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

(See Exhibit D, at policy form CG 22 94 10 01).

24.    The Policy included the following pertinent definitions:

>   **16.**  "Products-completed operations hazard":
>
>   >   **a.**   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>   >
>   >   **(1)**   Products that are still in your physical possession; or
>   >
>   >   **(2)**   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>   >
>   >   >   **(a)**   When all of the work called for in your contract has been completed.
>   >   >
>   >   >   **(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>   >   >
>   >   >   **(c)**   When that part of the work done at a job site has

> been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

* * *

22. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing of or failure to provide warnings or instructions

9

(Form CG 00 01 12 04, pp.14-15 of 15.)

## COUNT I
## NO COVERAGE UNDER MID-CONTINENT'S CGL POLICY BECAUSE ALLEGED DAMAGES DID NOT OCCUR DURING THE POLICY PERIOD

25. Mid-Continent realleges paragraphs 1 through 24 as paragraph 25 of Count I.

26. There is no duty to defend or indemnify HCH or Holloway under Underlying Complaint or under Elizalde and Stuhrke's Amended Crossclaims as the damages, if any, to the Bates home did not take place during the policy period.

27. Based on the foregoing, an actual controversy exists among the parties, and this Court has the power to declare the rights and liabilities of the parties.

28. Mid-Continent does not have an adequate remedy at law.

Wherefore, Mid-Continent requests this Court to:

  a. take jurisdiction over this matter;

  b. find and declare that Mid-Continent has no duty to defend or indemnify HCH and Holloway from the Underlying Complaint, Counts I and VII;

  c. find and declare that Mid-Continent has no duty to defend or indemnify HCH LLC and Holloway from Elizalde and Stuhrke's Amended Crossclaims, Counts I and II;

  d. Award any other relief this Court deems appropriate.

## COUNT II
## NO DUTY TO INDEMNIFY UNDER MID-CONTINENT'S CGL POLICY TO THE EXTENT THE ALLEGED DAMAGES DO NOT CONSTITUTE "PROPERTY DAMAGE," AS DEFINED BY MID-CONTINENT'S GCL POLICY

29. Mid-Continent realleges paragraphs 1 through 24 as paragraph 29 of Count II.

14462191v1 879147 56475

30. The Mid-Continent policy provides coverage in the event of "property damage," which the policy defines as "physical injury to tangible property, including all resulting loss of use of that property." (See Exhibit D, at form number CG 00 01 10 01, at pp. 13 of 14).

31. To the extent the Bates seek damages to repair and replace defective work in their Underlying Complaint, such damages are not "property damage," as that term is defined in the policy.

32. Based on the foregoing, an actual controversy exists among the parties, and this Court has the power to declare the rights and liabilities of the parties.

33. Mid-Continent does not have an adequate remedy at law.

Wherefore, Mid-Continent requests this Court to:

    a. take jurisdiction over this matter;

    b. find and declare that Mid-Continent has no duty to indemnify HCH, HCH LLC, and Holloway to the extent the Underlying Complaint does not seek damages;

    c. Award any other relief this Court deems appropriate.

## COUNT III
## NO DUTY TO INDEMNIFY UNDER EXCLUSION J(5), J(6) and/or L

34. Mid-Continent realleges paragraphs 1 through 24 as paragraph 34 of Count III.

35. The Bates allege they contracted to purchase the home on February 14, 2006, that construction of the home was substantially completed in January 2006, and that a Certificate of Occupancy issued in March 2006. (See Underlying Complaint, ¶24, 28).

36. They further allege "shortly after purchasing and moving into the home," they began to notice defects. (See Underlying Complaint, ¶34).

37. There is no coverage under the Policy for the defects to the extent they constitute "property damage" to "that particular part of real property on which [HCH or HCH LLC], or any contractors or subcontractors working directly or indirectly on [HCH or HCH LLC's] behalf are performing operations, if the alleged "property damage" arises out of those operations," because they are barred by exclusion j(5).

38. There is no coverage under the Policy for the alleged defects to the extent they constitute "property damage" to "that particular part of any property that must be restored, repaired or replaced because [HCH or HCH LLC's] work was incorrectly performed on it," because they are barred by exclusion j(6).

39. In the alternative, if the "products-completed operations hazard" applies, there is no coverage for the alleged "property damage" because "property damage" to "your work" is excluded.

40. Based on the foregoing, an actual controversy exists among the parties, and this Court has the power to declare the rights and liabilities of the parties.

41. Mid-Continent does not have an adequate remedy at law.

Wherefore, Mid-Continent requests this Court to:

    a. take jurisdiction over this matter;

    b. find and declare that Mid-Continent has no duty to indemnify HCH, HCH LLC, and Holloway in the Underlying Complaint or crossclaims for any damages excluded by j(5), j(6) or l;

    c. Award any other relief this Court deems appropriate.

### COUNT IV

14462191v1 879147 56475

## NO DUTY TO INDEMNIFY HCH OR HOLLOWAY BECAUSE "INTENTIONAL ACT" EXCLUSION BARS COVERAGE FOR COUNT VII, FOR FRAUD IN THE INDUCEMENT, UNDER MID-CONTINENT'S CGL POLICY

42. Mid-Continent realleges paragraphs 1 through 24 as paragraph 42 of Count IV.

43. The policy excludes "property damage" that is "expected or intended from the standpoint of the insured."

44. The Underlying Complaint alleges "[i]n order to gain [a] position of trust and confidence with the Bates and to induce them to purchase the home, Holloway and HCH gave the Bates the following assurances:

(a) that they built the home in the same manner as if this were their home;
(b) that they built the home similarly to Holloway's own home;
(c) that they used the same framer Elizalde, that Holloway used on his own home;
(d) that Holloway's father, a job foreman on the home, lived in the completed guest house so he could observe the construction on a daily basis and that it would be perfect in every way; and
(e) that HCH and Holloway live and built exclusively in Winter Park only, and thus their reputation for construction quality in that community is paramount.

(Underlying Complaint, ¶122).

45. The Bates further alleged, prior to selling the home to the Bates, HCH and Holloway represented the house was constructed in a good and workmanlike manner and free of defects, despite knowing that was not true. (Underlying Complaint, ¶123-124).

46. The Bates alleged HCH and Holloway "went so far as to actually conceal the deficiencies," including "walling over" a finished sliding pocket door in an attempt to mask an obvious slope in the floor, and filling cracks in the wood floors with "wood fillers." (Underlying Complaint, ¶129).

14462191v1 879147 56475

47. The alleged misrepresentations made by HCH and Holloway, as alleged above in ¶¶59 through 61, were "expected or intended from the standpoint of the insured" to cause injury to the Bates.

48. Based on the foregoing, an actual controversy exists among the parties and this Court has the power to declare the rights and liabilities of the parties.

49. Mid-Continent does not have an adequate remedy at law.

Wherefore, Mid-Continent requests this Court to:

    a. take jurisdiction over this matter;

    b. find and declare that Mid-Continent has no duty to indemnify HCH, HCH LLC, and Holloway for Count VII in the Underlying Complaint;

    c. Award any other relief this Court deems appropriate.

Dated: 11/20/___, 2009.

                                                                                                 _____
Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Tracy L. Kramer
Florida Bar No. 0055281
tkramer@hinshawlaw.com
HINSHAW & CULBERTSON LLP
9155 S. Dadeland Boulevard
Suite 1600
Miami, Florida 33156-2741
Telephone: 305-358-7747
Facsimile: 305-577-1063

14